**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Ocala Division**

AMANDA L. HAIR,                                    CASE NO:

      Plaintiff,

      vs.

EQUIFAX INFORMATION SERVICES,
LLC and
NATIONAL CONSUMER TELECOM &
UTILITIES EXCHANGE, INC.

      Defendants.

_____/

## PLAINTIFF'S COMPLAINT
### JURY DEMAND

1. Plaintiff AMANDA L. HAIR ("Plaintiff" or "Mrs. Hair") by and through the undersigned counsel, brings this action against Defendants EQUIFAX INFORMATION SERVICES, LLC ("Equifax") and NATIONAL CONSUMER TELECOM & UTILITIES EXCHANGE, INC. ("NCTUE") for violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et. seq.* ("FCRA")

2. Plaintiff alleges as follows against Equifax and NCTUE (collectively "Defendants").

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4. Venue here is proper under 28 U.S.C. § 1391 because a substantial part

of the events giving rise to the claims occurred in Lake County, Florida.

## PARTIES

5.     Plaintiff is a natural person who, at all times relevant to this action was a resident of Lake County, Florida and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.     Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). It is one of the "Big 3" consumer reporting agencies with credit files on the majority of adult Americans.

7.     Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

8.     NCTUE is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

9.     NCTUE is a New Jersey corporation incorporated under the laws of the State of New Jersey.  NCTUE regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

10.     Specifically, NCTUE provides consumer reports that contain information about consumers' payment histories and/or delinquent account

statuses with their current or prior telecommunications and utilities providers that is not available on traditional consumer reports such as those prepared by Equifax.

11.     NCTUE's consumer reports are used by the telecommunication and utility industries for the purposes of evaluating consumers' eligibility for new accounts.

12.     Equifax operates all of NCTUE's consumer reporting operations and all actions to comply with the FCRA, and has done so for decades.

13.     The NCTUE database, where its member companies within these industries submit data regarding consumer accounts, is operated and maintained by Equifax.

14.     Equifax, on behalf of NCTUE, receives, responds to, and reinvestigates all consumer disputes submitted to NCTUE.

15.     On January 18, 2024, Equifax and NCTUE announced that the companies will be extending their service agreement wherein Equifax will continue its management of the NCTUE database, provide NCTUE with enhanced product innovation, advanced data security measures and marketing support. Equifax Extends Service Agreement with National Consumer Telecom and Utilities Exchange :: Equifax Inc. (EFX) (last visited on January 23, 2024).

16.     In this action, Mrs. Hair claims that Equifax violated the FCRA in its actions related to its own consumer reports and direct interactions with Mrs. Hair (Counts I-VI), and in Equifax's actions taken on behalf of and in the name of NCTUE (Counts VII-IX).

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

17.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

18.     Congress found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3),(4).

19.     The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

20.     Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

21.     The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required CRAs to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate

proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

22.    A CRA may decline to "block" information only if the CRA reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. *See* 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined the CRA must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

23.    In the absence of such a determination of material misrepresentation or error, a CRA cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

24.    "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.,* No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

25.    The FCRA requires a credit reporting agency to "follow reasonable

procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

26.     The FCRA requires that if a consumer disputes any item of information contained in their credit file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

27.     In performing the reinvestigation, the FCRA requires the CRA to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

28.     The FCRA also requires the CRA to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

29.     The FCRA provides that if the disputed information is inaccurate or incomplete or cannot be verified, the CRA "shall...(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted

from the file of the consumer." 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

30.    The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

31.    The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

32.    The FCRA requires that, upon a consumer's request, a CRA shall disclose to the consumer all the information in the consumer's file at the time of the request, the identification of each person who procured a consumer report for any purpose during the previous one-year period, and a record of all inquiries received by the CRA during the previous one-year period that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer. 15 U.S.C.S. § 1681g(a)(1)(3)(5).

33.    The FCRA requirements are important, because they help CRAs ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

34.    The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1681n.

35.     If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

36.     If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

37.     A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees.  15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## **FACTUAL ALLEGATIONS AS TO EQUIFAX**

38.     Mrs. Hair is a victim of identity theft.

39.     In January 2022, Mrs. Hair learned that her credit reports were being accessed by potential credit lenders.  Mrs. Hair, however, had not applied for credit with these lenders.

40.     An identity thief was using Ms. Hair's identification, including her maiden name, Amanda Garcia, and other personal identifying information to fraudulently gain access to Ms. Hair's existing credit accounts and open new credit accounts.

41.     In an attempt to remedy and prevent further instances of identity theft against her, Mrs. Hair began placing fraud alerts and requesting her files from varies consumer reporting agencies including Equifax.

42.     Mrs. Hair learned that Equifax included information in her file at Equifax that resulted from identity theft, including "inquiry" information listing each company that had obtained her credit report from Equifax and the date,

although she had not sought credit with those companies.

43.    Mrs. Hair disputed the fraudulent inquiry information with Equifax.

44.    Mrs. Hair received results to her disputes from Equifax dated January 28, 2022. Equifax stated that six inquiries that she had disputed had been deleted from her credit file, identified as: 1-26-2022 WF Card Svc, 1-19-2022 Wells Fargo Bank, 1-12-2022 Comenity Bank/Bealls, 1-12-2022 Citibank NA/WAWA, 1-4-2022, Citibank NA Best B, and 1-2-2022 CBNA.

45.    However, when Mrs. Hair obtained and reviewed her Equifax credit report dated September 16, 2022, she saw that the six inquiries that Equifax had told her it had deleted were still on her credit report. None of them had been deleted, contrary to Equifax's results assuring her that they had been.

46.    The September 16, 2022 report listed new fraudulent inquiries in March 2022, showing that Equifax was still providing her report for applications by the identity thief despite knowing that Mrs. Hair was a victim of identity theft.

47.    The September 16, 2022 report did not list all the persons who had received her consumer report and who had made inquiries in the preceding one-year period, in violation of the FCRA, 15 U.S.C. § 1681g(a)(3) and (5).

48.    On or about November 1, 2022, Mrs. Hair mailed a dispute letter to Equifax, stating that Equifax "has not corrected the issues I have requested." She again told Equifax that she was the victim of identity theft. She described how the thief was using her identification to open credit accounts. She again disputed the six fraudulent inquiries she had previously disputed, as well as other inquiries

listed on her September 16, 2022 report that occurred after her previous dispute: 3-4-2022 Carmax Auto Finance, 3-3-2022 Credco, a second 3-4-2022 Carmax Auto Finance, and 3-3-2022 Dealertrack, Inc.  She attached a page of the September 16, 2022 Equifax report listing all ten of the fraudulent inquiries she was disputing. She stated that they all resulted from identity theft and fraud.  She requested they be removed from her credit file. Mrs. Hair also provided Equifax with a police report and a Federal Trade Commission Identity Theft Report, each of which is an "identity theft report" as that term is defined by the FCRA, 15 U.S.C. § 1681a(q)(4). She also enclosed copies of her driver's license, social security card and marriage license.

49.    Mrs. Hair received a letter from Equifax, dated November 17, 2022, stating that Equifax would not block the information that she had disputed.

50.    Mrs. Hair received results of reinvestigations from Equifax dated November 30, 2022. Equifax stated 13 times: "The results are: THIS FRAUD ACCOUNT/INQUIRY HAS BEEN DELETED." Equifax did not identify the item to which it referred for any of these results.  Equifax also stated 9 times: "THE DISPUTED ITEM IS NOT CURRENTLY REPORTING ON THE EQUIFAX CREDIT FILE." Equifax twice stated: "PLEASE BE ADVISED THAT THE DISPUTED ITEM IS NOT REPORTING ON YOUR EQUIFAX CREDIT FILE." Equifax also provided results stating that it had updated her name and had verified that a Wells Fargo Home Mortgage account belongs to her.

51.    Mrs. Hair obtained her Equifax credit report dated April 3, 2023.

Equifax was reporting several inquiries that she had disputed and Equifax had told her had been deleted: 1-12-2022 Comenity Bank/Bealls, 1-12-2022 Citibank NA/WAWA, 3-3-2022 Credco, 1-4-2022 Citibank NA Best B (listed as "Best Buy").

52.     The April 3, 2023 report listed other fraudulent inquiries, showing that Equifax had furnished Mrs. Hair's credit report for applications by the identity thief despite knowing that Mrs. Hair was a victim of identity theft.

53.     Mrs. Hair obtained her Equifax credit report dated July 31, 2023. Equifax was still reporting five inquiries that she had disputed and Equifax had told her had been deleted: 3-3-2022 Credco, 1-12-2022 Comenity Bank/Bealls 1-12-2022 Citibank NA/WAWA, 1-4-2022 Citibank NA Best Buy, 1-2-2022 CBNA.

54.     Equifax prepared and furnished credit reports about Mrs. Hair that contained inaccurate information to creditors of Mrs. Hair.

55.     As a result of Equifax's conduct, Mrs. Hair has suffered actual damages, including emotional distress, damage to reputation, lost time and labor, and invasion of privacy including disclosure of highly personal and private information found in her consumer report.

**FACTUAL ALLEGATIONS AS TO NCTUE and EQUIFAX**

56.     Mrs. Hair is a victim of identity theft.

57.     In January 2022, Mrs. Hair learned that her credit reports were being accessed by potential credit lenders, to whom she had not applied for credit.

58.     An identity thief was using Ms. Hair's identification, including her maiden name, Amanda Garcia, and other personal identifying information to

fraudulently gain access to Ms. Hair's existing credit accounts and open new credit accounts.

59.    Mrs. Hair learned that NCTUE included information in her file at NCTUE that did not belong to her, including information resulting from the identity theft.

60.    Mrs. Hair disputed the inaccurate information with NCTUE.

61.    Mrs. Hair obtained her report from NCTUE in September 2022.  The report indicated that NCTUE had provided her consumer report to Verizon Wireless twice on January 7, 2022, and to AT&T Mobility on February 11, 2022.

62.    Mrs. Hair had not applied for services with Verizon Wireless or AT&T Mobility and believed that NCTUE had provided her information to these companies as a result of the identity theft.

63.    On or about November 1, 2022, Mrs. Hair mailed a dispute letter to NCTUE disputing the fraudulent inquiries from Verizon Wireless and AT&T Mobility.  With her dispute, Mrs. Hair provided NCTUE with a police report and a Federal Trade Commission Identity Theft Report, each of which is an "identity theft report" as that term is defined by the FCRA, 15 U.S.C. § 1681a(q)(4).

64.    Mrs. Hair received a letter from NCTUE, dated November 10, 2022, purporting to be the results of the "reinvestigation" of her disputes.  The letter stated that NCTUE had "completed the reinvestigation of your dispute."  For the results of her disputes that the Verizon Wireless inquiries were the result of fraud, NCTUE stated: "The results are: Inquiries are a factual record of file access. If you

have reason to believe this inquiry is fraudulent please contact your service provider directly and follow their internal fraud procedures. If you have additional questions about this item please contact: VERIZON WIRELSSS, PO BOX 650051 DALLAS TX 75265, 800-754-0961." For the results of her dispute that the AT&T Mobility inquiry was the result of fraud, NCTUE provided the same form response and an address and phone number for AT&T Mobility. This response indicated that NCTUE had failed to block the disputed inquiries, as required by the FCRA, and had not conducted a reinvestigation under the procedures mandated by the FCRA or notified Verizon Wireless or AT&T Mobility about her disputes.  The NCTUE report attached to the results still listed the three fraudulent disputed inquiries, showing that NCTUE had not blocked them from her file.

65.     On or about April 10, 2023, Mrs. Hair mailed another dispute letter to NCTUE requesting that the fraudulent Verizon Wireless and AT&T Mobility items be removed from her consumer file.  Mrs. Hair again provided NCTUE with a police report and a Federal Trade Commission Identity Theft Report, each of which is an "identity theft report" under the FCRA.

66.     Mrs. Hair received reinvestigation results from NCTUE dated April 17, 2023. In regard to her disputes of the three inquiries, NCTUE stated that "the disputed inquiry Verizon Wireless 01/07/22, is not currently reporting on your NCTUE Data report" and "the additional disputed inquiries are not currently reporting on your NCTUE Data report." Those results were false, and NCTUE knew it.  The NCTUE report appended to the results clearly listed the Verizon Wireless

and AT&T Mobility inquiries that NCTUE had stated were *not* reporting on her report.  NCTUE could see that those inquiries were on her report, and that its results were false.

67.    As a result of Defendants' conduct, Mrs. Hair has suffered actual damages, including emotional distress, lost time and labor, and invasion of privacy including disclosure of highly personal and private information found in her consumer report.

## COUNT I – VIOLATIONS OF 15 U.S.C. § 1681c-2 AGAINST EQUIFAX

68.    Plaintiff incorporates by reference her allegations in paragraphs 1-7 and 16-55 as if fully set forth herein.

69.    Equifax failed to block the information that Plaintiff specifically identified was the result of identity theft, in violation of the FCRA, § 1681c-2.

70.    Equifax's acts and/or omissions were willful, rendering it liable for punitive damages pursuant to the FCRA, § 1681n.

71.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

72.    Equifax's conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

73.    Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT II – VIOLATIONS OF 15 U.S.C. § 1681i
## AGAINST EQUIFAX

74.    Plaintiff incorporates by reference her allegations in paragraphs 1-7 and 16-55 as if fully set forth herein.

75.    Equifax received Plaintiff's disputes of items of information in her file, which specified which information was inaccurate and why it was inaccurate.

76.    Equifax violated 15 U.S.C. § 1681i by failing to reasonably reinvestigate or delete the disputed information, or follow the other requirements in 15 U.S.C. § 1681i.

77.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

78.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

79.    Equifax's conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

80.    Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT III – VIOLATIONS OF 15 U.S.C. § 1681b(a)(3)
## AGAINST EQUIFAX

81.    Plaintiff incorporates by reference her allegations in paragraphs 1-7 and 16-55 as if fully set forth herein.

82.     Equifax provided Plaintiff's consumer report to persons who were not seeking it in connection with a credit transaction involving Plaintiff, in violation of the FCRA, § 1681b(a)(3).

83.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

84.     In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85.     Equifax's conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

86.     Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT IV– VIOLATIONS OF 15 U.S.C. § 1681e(b) AGAINST EQUIFAX

87.     Plaintiff incorporates by reference her allegations in paragraphs 1-7 and 16-55 as if fully set forth herein.

88.     Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information in the preparation of the consumer reports it published concerning Plaintiff.

89.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

90.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

91.    Equifax's conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

92.    Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT V – VIOLATIONS OF 15 U.S.C. § 1681g
## AGAINST EQUIFAX

93.    Plaintiff incorporates by reference her allegations in paragraphs 1-7 and 16-55 as if fully set forth herein.

94.    Equifax failed to provide Plaintiff, upon her request, with the identification of each person who procured a consumer report for any purpose during the previous one-year period, and a record of all inquiries it received during the previous one-year period that identified Plaintiff in connection with a credit or insurance transaction that was not initiated by Plaintiff, in violation of the FCRA, § 1681g.

95.    Equifax's acts and/or omissions were willful, rendering it liable for punitive damages pursuant to the FCRA, § 1681n.

96.    In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

97. Equifax's conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

98. Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT VI – VIOLATIONS OF 15 U.S.C. § 1681b(c)(3) AGAINST EQUIFAX

99. Plaintiff incorporates by reference her allegations in paragraphs 1-7 and 16-55 as if fully set forth herein.

100. Equifax violated 15 U.S.C. § 1681b(c)(3) by furnishing to a person a record of inquiries in connection with a credit or insurance transaction that was not initiated by Plaintiff.

101. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

102. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

103. Equifax's conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

104. Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT VII – VIOLATIONS OF 15 U.S.C. § 1681c-2
## AGAINST NCTUE AND EQUIFAX

105.    Plaintiff incorporates by reference her allegations in paragraphs 1-37 and 56-67 as if fully set forth herein.

106.    Defendants failed to block the information that Plaintiff specifically identified was the result of identity theft, in violation of the FCRA, § 1681c-2.

107.    Defendants' acts and/or omissions were willful, rendering them liable for punitive damages pursuant to the FCRA, § 1681n.

108.    In the alternative, Defendants negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

109.    Defendants' conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

110.    Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT VIII – VIOLATIONS OF 15 U.S.C. § 1681i
## AGAINST NCTUE AND EQUIFAX

111.    Plaintiff incorporates by reference her allegations in paragraphs 1-37 and 56-67 as if fully set forth herein.

112.    Defendants received Plaintiff's disputes of items of information in her file, which specified which information was inaccurate and why it was inaccurate.

113.    Defendants violated 15 U.S.C. § 1681i by failing to reasonably reinvestigate or delete the disputed information or follow the other requirements in 15 U.S.C. § 1681i.

114.    Defendants' acts and/or omissions were willful, rendering them liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

115.    In the alternative, Defendants negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

116.    Defendants' conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

117.    Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## COUNT IX – VIOLATIONS OF 15 U.S.C. § 1681b(a)(3) AGAINST NCTUE AND EQUIFAX

118.    Plaintiff incorporates by reference her allegations in paragraphs 1-37 and 56-67 as if fully set forth herein.

119.    Defendants provided Plaintiff's consumer reports to persons who were not seeking them in connection with a credit transaction involving Plaintiff, in violation of the FCRA, § 1681b(a)(3).

120.    Defendants' acts and/or omissions were willful, rendering them liable to Plaintiff for punitive damages pursuant to 15 U.S.C. § 1681n.

121.    In the alternative, Defendant negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122.    Defendants' conduct was a direct and proximate cause and/or substantial factor in causing the injuries to Plaintiff as described above, for which Plaintiff seeks her actual damages.

123.    Plaintiff seeks her attorney fees and costs pursuant to 15 U.S.C. § § 1681o(a) and 1681n(a).

## JURY DEMAND

124.    Plaintiff demands a trial by jury on all issues so triable.

**PRAYER**

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax and NCTUE, separately, in the form of:

a.  Actual damages in an amount to be determined by the jury;

b.  Punitive damages in an amount to be determined by the jury;

c.  Statutory damages as determined by the jury;

d.  Attorney fees, litigation expenses and costs;

e.  Interest as permitted by law; and

f.  Such other and further relief including as the Court deems equitable and just under the circumstances.

Dated: January 26, 2024            *Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**
830 North Federal Highway
Lake Worth, FL 33460
Telephone: 561-291-9109
Fax: 844-921-1022

/s/ Kevin Rajabalee
Kevin Rajabalee, Esq.
FBN: 119948
Email: kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
Email: eiman@sharminlaw.com
*Attorneys for Plaintiff*